IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GENE GERDES and ALICE GERDES, | ) | |
| | ) | |
| Plaintiffs, | ) | 7:06CV5002 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| MILDRED KITTELMANN, RANDY KITTELMANN, MONTE KITTELMANN, and BRUCE KITTELMANN, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on the Plaintiffs' Motion for Contempt Citation and Enforcement of Settlement Agreement, Filing No. 26. Having reviewed the matter, the court finds the Defendants have complied with the settlement agreement terms and said motion should be denied.

Gene Gerdes and Alice Gerdes (collectively "Plaintiffs") live adjacent to Mildred Kittelmann, Randy Kittelmann, Monte Kittelmann, and Bruce Kittelmann (collectively "Defendants") in Alliance, Nebraska. On January 23, 2006, Plaintiffs filed a complaint in this court alleging causes of action against the Defendants under the Resource, Conservation and Recovery Act, 42 U.S.C. §6972, and the Clean Air Act , 42 U.S.C. §7604, and state law claims for private nuisance and declaratory judgment. The Plaintiffs' claims are based on the Defendants' conduct in keeping several inoperable motor vehicles and uninhabitable trailers on the Defendants' property that were within the line of sight from the Plaintiffs' property, failing to control the population of prairie dogs on the Defendants' property, and failing to control erosion of the Defendants' property.

The court ordered the Plaintiffs and Defendants (collectively "Parties") to mediate their dispute if they had not already attempted to do so. Filing No. 18. Pursuant to that order, the Parties mediated their dispute and reached an agreement on all issues on September 26, 2006. As part of the mediated resolution, the Parties entered into a Compromise and Settlement Agreement ("Settlement Agreement"), Filing No. 22. The relevant terms of the Settlement Agreement are as follows:

> 2.2 Prairie Dog Population Control. **Upon execution of this Agreement and for four years following the execution of this Agreement**, Kittelmann shall undertake steps to control the prairie dog population on the Kittelmann Property. Specifically, Kittelmann shall implement and follow any recommendations of: a) the United States Department of Agriculture ("USDA"), Natural Resources Conservation Service; b) the Upper Niobrara Natural Resource District ("NRD"); c) the box Butte County extension agent; or d) such other third party as identified and agreed upon, in writing, by Gerdes and Kittelmann. Such agreement shall not be unreasonably withheld.
>
> 2.3 Erosion Control on Kittelmann Property. Upon execution of this Agreement and for four years following the execution of this Agreement, Kittelmann shall undertake steps to control the erosion of soil on and from the Kittelmann Property. Kittelmann shall implement and follow guidelines for erosion control recommended by: a) the USDA, Natural Resources Conservation Service; b) the NRD; c) the box Butte County extension agent; or d) such other third party as identified and agreed upon, in writing, by Gerdes and Kittelmann. Such agreement shall not be unreasonably withheld.
>
> 2.4 Removal of Motor Vehicles. With 90 days of the date of the execution of this Agreement, subject only to the *force majeure* clause below, the Kittelmanns shall lawfully remove, or cause to be removed, from the Kittelmann Property and outside of the line of sight of the Gerdes Property, all motor vehicles, automotive parts, scrap metal and all uninhabitable trailers located on the Kittelmann Property. The Kittelmanns may keep and maintain on the Kittelmann Property four operable vehicles used in the operation of the farm and two habitable trailers. The Kittelmanns shall be allowed to maintain automobiles within garages or out-buildings, as long as the garages or out-buildings have closed doors and roof, and such automobiles shall be either restored or in the process of restoration. Prior to the execution of this Agreement, Kittelmanns will provide to counsel for Gerdes, photographs of the vehicles currently in the garages, which have either been restored or in the process of restoration.

> 2.5 "*Force Majeure*," for purposes of this Agreement, is defined as any event arising from causes entirely beyond the control of the Kittelmanns that delays the timely performance of any obligation under this Agreement notwithstanding the Kittelmanns' best efforts to avoid the delay or to fulfill the obligation. The requirement that the Respondents exercise "best efforts to avoid the delay or to fulfill the obligation" includes using best efforts to anticipate any potential *force majeure* event and best efforts to address the effects of any potential *force majeure* event (i) as it is occurring and (ii) following the potential *force majeure* event, such that the delay is minimized to the greatest extent practicable. . . . If any event occurs or has occurred that may delay performance of any obligation under this Agreement, whether or not caused by a *force majeure* event, Kittelmann shall notify Gerdes within forty-eight (48) hours of when the Kittelmann knew or should have known that the event might cause a delay. Within five (5) business days thereafter, Kittelmann shall provide in writing (i) the reasons for the delay; (ii) the anticipated duration of the delay; (iii) all actions taken or to be taken to prevent or minimize the delay; and (iv) a schedule for implementation of any measures to be taken to mitigate the effect of the delay. Kittelmann shall exercise best efforts to avoid or minimize any delay and effects of a delay. Failure to comply with the above requirements shall preclude Kittelmann from asserting any claim of *force majeure.* If Gerdes agrees that the delay or anticipated delay is attributable to *force majeure*, the time for performance of the obligations under the Agreement that are directly affected by the *force majeure* event shall be extended for a period of time not to exceed the actual duration of the delay caused by the *force majeure* event. An extension of time for performance of the obligation directly affected by the *force majeure* event shall not, of itself extend the time for performance of any subsequent obligation, unless such extension is agreed upon by the Parties.

Filing No. 22 (emphasis added).

Plaintiffs' Motion for Contempt Citation and Enforcement of the Settlement Agreement alleges the Defendants have not complied with the terms of the Settlement Agreement and seeks the following relief:

1. The Court set this matter for hearing;
2. The Court finds the Defendants in Contempt of Court;
3. The Court enter an order requiring Defendants to perform their obligations as agreed to in the mediation as memorialized in the Settlement Agreement and Order;
4. Appropriate sanctions (including attorney's fees); and
5. Such other relief to which Plaintiffs may be entitled.

Filing No. 26 at 7.

The court heard the Plaintiffs' Motion for Contempt Citation and Enforcement of the Settlement Agreement on February 10, 2011, and determined that a special master was best suited to conduct an investigation into whether the Defendants had complied with the terms of the Settlement Agreement. The court required the special master to submit a recommendation to the court based on that investigation. Filing No. 37. The court then appointed Howard P. Olsen, Jr., as special master in this matter and he subsequently investigated whether the Defendants had complied with the terms of the Settlement Agreement. During his investigation, the special master visited both the Plaintiffs' property and the Defendants' property and observed the status of the Defendants' property with respect to the prairie dog population, the number and location of motor vehicles and trailers, and the condition of the soil and the extent of any soil erosion. Mr. Olson also conferred with a number of the experts who had knowledge of and supervised the prairie dog and erosion issues.[1]

With respect to the Defendants' efforts in controlling the prairie dog population on their property, the special master determined the Defendants complied with the terms of the Settlement Agreement, because the Defendants undertook steps to control the prairie dog population. The special master also noted the prairie dog population on the Defendants' property had increased and recommended the Defendants "should be encouraged to continue the eradication process" and provide evidence to the court of such continued

---

[1] Mr. Olsen provided the Court with a very thorough report and recommendation. The Court is most appreciative of his efforts, the quality of his work, and his willingness to assist with this matter.

efforts until an inspector can certify the prairie dog population on the Defendants' property has been completely eradicated. The Defendants disagree with the special master's recommendation on the grounds that the Settlement Agreement does not require the Defendants to *eradicate* the prairie dog population on their property or impose a continuing duty on the Defendants to control the prairie dog population past the four-year term in the Settlement Agreement. The court agrees.

By the terms of the Settlement Agreement, the Defendants were not obligated to completely eradicate the prairie dog population on their property. Nor were the Defendants obligated to continue their efforts in controlling the prairie dog population at any point after the expiration of the four-year term in the Settlement Agreement. Rather, the Defendants were obligated only to undertake steps to control the prairie dog population on their property for a term of four years. Indeed, the special master found the Defendants complied with the terms of the Settlement Agreement despite the increased prairie dog population, because the Defendants undertook steps to control the prairie dog population on their property. Therefore, the court finds the Defendants complied with the Settlement Agreement with respect to controlling the prairie dog population and refuses to impose any additional requirements on the Defendants past that which was required in the Settlement Agreement.

With respect to the number and location of inoperable motor vehicles and uninhabitable trailers, the special master "did not see any junk or vehicles" in the line of sight from the Plaintiffs' property except for a single inhabitable trailer. With respect to the extent of soil erosion, the special master observed a "fair stand of grass" on the Defendants' property. Based on these observations, the special master determined the Defendants had complied with the terms of the Settlement Agreement regarding erosion and junk removal,

and no further action by the Court is needed on these claims. The Court agrees with the special master's recommendation on these issues. Therefore, the court finds the Defendants complied with the terms of the Settlement Agreement and refuses to impose any additional requirements on the Defendants with respect to these issues.

The court also reviewed the Parties' requests for attorney fees. The court finds that an award of attorney fees is not appropriate for either party in this case. Accordingly, the court denies each party's request for attorney fees.

THEREFORE, IT IS HEREBY ORDERED:

1. Plaintiffs' Motion for Contempt Citation and Enforcement of Settlement Agreement (Filing No. 26) is denied.

2. The Parties' requests for attorney fees are denied.

3. Mr. Olson shall provide the Court with a statement for services rendered.

DATED this 8th day of September, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.